UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.

NADIA HARRIS,
      Plaintiff,

vs.

VELOCITY INVESTMENTS, LLC, and
NADERPOUR & ASSOCIATES, P.A.,
      Defendants.

_____/

## **COMPLAINT**
### **(JURY DEMAND)**

Plaintiff NADIA HARRIS ("Harris") sues Defendants VELOCITY INVESTMENTS,

LLC ("Velocity") and NADERPOUR & ASSOCIATES, P.A. ("Naderpour"):

### **Jurisdiction and Venue**

1.  This is an action for violation of the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C. §1692, *et seq*.

2. This is an action for statutory damages exclusive of costs, interest and

attorney's fees.

3. This Honorable Court has jurisdiction according to 15 U.S.C. § 1692k(d).

4. Venue in this District is proper, according to 28 U.S.C. § 1391, because defendants

transact business in Miami-Dade County, Florida and the conduct complained of occurred in

Miami-Dade County, Florida.

### **Parties**

5.  Harris is a natural person residing at all relevant times in Miami-Dade County,

Florida.

6.  Harris is a ''consumer'' as defined by the FDCPA's § 1692a(3).

7.  Velocity is a limited liability corporation with its principal place of business in Wall

Township, New Jersey.

8. Velocity is licensed by the Florida Office of Financial Regulation as a *Consumer Collection Agency* (license number CCA0900469).

9. Velocity is a "debt collector" as defined by the FDCPA's § 1692a(6) because it uses the instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of debts or because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10. Naderpour is a professional association with its principal place of business in Hollywood, Florida.

11. Naderpour is a law firm.

12. Naderpour focuses on debt collection litigation representing creditors in a variety of matters through all litigation phases, including trial and post judgment recovery.

13. Naderpour is a "debt collector" as defined by the FDCPA's § 1692a(6) because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## The Debt

14. The debt at issue in this case is a consumer "debt" as defined by the FDCPA's § 1692a(5) because it was incurred primarily for personal, family, or household purposes.

## Facts

15. Velocity hired Naderpour to collect the debt at issue in this case from Harris.

16. Velocity hired Naderpour to sue Harris to collect the debt.

17. With respect to the debt Velocity sought to collect from Harris, Naderpour was acting as Velocity's collection agent.

18. Velocity's collection activities are imputed on or attributed to Naderpour.

19. Velocity is vicariously liable for the collection activities carried out by Naderpour on Velocity's behalf.

20. Naderpour's actions in its attempt to collect the debt from Harris are imputed on Velocity, so that Velocity is liable for Naderpour's conduct.

21. Naderpour is itself liable for its actions in its attempt to collect the debt from Harris.

22. On or about March 7, 2019, Velocity, through Naderpour, sued Harris in a one count Florida state court complaint (captioned VELOCITY INVESTMENTS, LLC ASSIGNEE OF LENDINGCLUB CORPORATION ASSIGNEE OF WEBBANK vs. NADIA HARRIS, No. 2019-006078-CC-23) alleging breach of contract. A copy of the complaint is attached as Exhibit *A*.

23. Velocity filed the Collection Case at the North Dade Justice Center, located at 15555 Biscayne Blvd, North Miami Beach, FL 33160.

**The Administrative Order**

24. Florida's Eleventh Circuit Court *Administrative Order* No. 04-05 divides Miami-Dade County into "County Court Districts". A copy of the administrative order is attached as Exhibit *B*.

25. *Administrative Order* No. 04-05 delineates the geographic boundaries of the County Court Districts by zip codes.

26. The North Dade Justice Center encompasses the "North District (23)".

27. The South Dade Justice Center Courthouse encompasses the "South District (26)".

**Distances and Travel Times**

28. At all relevant times, e.g., when she allegedly incurred the debt and when she was sued by Velocity and Naderpour, Harris resided at 1888 SE 14Th St., Homestead, FL 33035.

29.  Thus, according to *Administrative Order* No. 04-05, Harris resided in the "South District (26)" when she entered into a contract with the original creditor and when Velocity sued her.

30.  The shortest distance route between Harris' home and the North Dade Justice Center is approximately **46.9 miles** (via Ronald Reagan Turnpike and FL-874). See attached Exhibit ***C*** (Google Maps printout).

31.  The shortest distance route between Harris' home and the South Dade Justice Center is approximately **11.1 miles** (via US-1 N). Exhibit ***D***.

32.  The shortest time route between Harris' home and the North Dade Justice Center is approximately **69 minutes** (i.e., **1 hour and 9 minutes** via Ronal Reagan Turnpike). See Attached Exhibit ***C***.

33.  The shortest time route between Harris 's home and the South Dade Justice Center Courthouse is approximately **21 minutes** (via Ronald Reagan Turnpike). See attached Exhibit ***D***.

34.  Thus, the South Dade Justice Center Courthouse was closer and more convenient than the North Dade Justice for Harris to defend the debt collection lawsuit.

### Wrong District Filing

35.  Velocity **sued** Harris in the "**North District (23)**".

36.  Velocity **should have sued** Harris in the "**South District (26)**".

37.  Velocity knew or should have known that its filing of the Collection Case in a remote courthouse discouraged Harris from appearing and defending the debt collection case.

38.  Velocity knew or should have known that its filing of the debt collection case in a remote courthouse placed an unreasonable and more expensive burden on Harris which diminished her opportunity to answer and defend the debt collection case.

39. Velocity and Naderpour filed the collection lawsuit in the North District (23) for their convenience, because it was a lot easier for them to litigate a case close to Naderpour's Hollywood, Florida office than litigating the case closer to Harris's home.

### COUNT I
**[Violation of the FDCPA]**

40. Plaintiff incorporates here preceding paragraphs 1 through 39.

41. The FDCPA's § 1692i(a)(2) required that Velocity and Naderpour sue Harris in the "judicial district" or similar legal entity in which Harris resided at the commencement of the action.

42. Velocity and Naderpour violated 15 U.S.C. §1692i(a)(2) when they filed the debt collection case in the North Dade Justice Center instead of in the South Dade Justice Center.

43. As a result of their violation of the FDCPA, Velocity and Naderpour are liable to Harris.

**Prayer for Relief**

44. THEREFORE, Harris prays that this Court enter judgment against Velocity and Naderpour for:

a. Statutory damages, according to 15 U.S.C. § 1692k(a)(2)(A);

b. Costs, according to 15 U.S.C. § 1692k(a)(3);

c. Reasonable attorney's fees, according to 15 U.S.C. § 1692k(a)(3).

**Jury Trial Demand**

45. Harris demands trial by jury.

/s/ Leo Bueno
Leo Bueno, Florida Bar No. 716261
LEO BUENO, ATTORNEY, PLLC
P.O. Box 141679
Coral Gables, FL 33114-1679

Telephone: 305-669-5260
Leo@BuenoLaw.com

/s/ Joey D. Gonzalez
Joey D. Gonzalez, Florida Bar No. 127554
JOEY GONZALEZ, ATTORNEY, P.A.
P.O. Box 145073, Coral Gables, FL 33114-5073
Telephone: 305-720-3114
Fax: 305-676-8998
Joey@JoeyGonzalezLaw.com

Z:\- - - CLIENT FILES - - -\Harris Nadia [Debt-FDCPA]\Pleadings - Disclosures - Notices\Harris Nadia Complaint FDCPA Debt Buyer and Attorney Federal.docx

# Exhibit
# A

IN THE COUNTY COURT OF THE 11TH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

VELOCITY INVESTMENTS, LLC
ASSIGNEE OF LENDINGCLUB CORPORATION
ASSIGNEE OF WEBBANK

      Plaintiff,

vs.                                CASE NO.:

NADIA HARRIS

      Defendant(s).

_____/

## COMPLAINT

Plaintiff, VELOCITY INVESTMENTS, LLC ASSIGNEE OF LENDINGCLUB CORPORATION ASSIGNEE OF WEBBANK ("Plaintiff"), by and through the undersigned counsel, sues Defendant(s), NADIA HARRIS ("Defendant"), in support thereof, alleges as follows:

## JURISDICTION

1.     This Court has jurisdiction over this dispute. The Complaint seeks damages that do not exceed the sum of $15,000.00; exclusive of court costs.

2.     Defendant(s) is/are amenable to jurisdiction in Florida because Defendant(s) resides in Florida, conducts substantial business in Florida, breached a contract within Florida, and/or committed all acts and omissions stated in the Complaint in Florida.

3. Pursuant to Florida Statute § 47.011 and / or 47.021, venue is proper in MIAMI-DADE County, Florida because this is the county where: (1) the acts and omissions alleged herein occurred and (2) the causes of action alleged herein accrued.

## GENERAL ALLEGATIONS

4. Plaintiff is, and at all times herein mentioned was, a limited liability company organized and existing under the laws of the State of Florida and authorized to transact business in the State of Florida.

5. Plaintiff is the true owner and holder of the instrument upon which this lawsuit is brought.

6. On or about August 3, 2016, Defendant entered into an agreement(s) with **LendingClub Corporation and/or affiliates** for a consumer loan—in an amount specifically agreed to—to be repaid in monthly installments bearing account number ending in: **--8769** (the "Agreement"). (*See* **Composite Exhibit "B,"** Borrower Agreement; Borrower Documents Page and Loan Agreement.)

7. Therefore, the entire loan balance on the previously referenced account is presently due and payable in full.

8. The referenced past due account was assigned, transferred, sold, conveyed, granted, and/or delivered to Plaintiff. (*See* **Composite Exhibit "A,"** Bill of Sale and Certificate of Loan Sale.)

9. Plaintiff has demanded payment from Defendant for payment of the balance due in the amount of: **$ 7762.17**, but, despite said demand, Defendant has failed to pay the balance due pursuant to the Agreement.

10.    All conditions precedent to bringing this action have been performed, satisfied, and/or executed by Plaintiff and/or waived by Defendant's acts and/or omissions.

## COUNT I – BREACH OF CONTRACT

Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation contained in Paragraphs one (1) through ten (10) as if fully set forth herein.

11.    Defendant, by executing the Agreement and/or using the monies provided by, or made available by, **LendingClub Corporation and/or affiliates**, has accepted the terms and conditions for the extension of said monies/credit.

12.    As of date, Defendant has defaulted in the payment obligations of the Agreement.

13.    The Agreement is, and at all times herein mentioned was, a valid and enforceable contract.

14.    As such, Defendant materially breached its contractual obligation by defaulting in the payment obligations.

15.    As a direct and proximate cause of Defendant's breach of the Agreement, **LendingClub Corporation and/or affiliates** sustained damages in the amount of the balance due on the previously referenced account.

16.    That obligation has been assigned, transferred, sold, conveyed, granted, and/or delivered to Plaintiff, who is the party entitled to enforce the Agreement and receive payment on the account's balance.

17.    Defendant is presently indebted to Plaintiff in the amount of: **$7762.17**.

18.     As a direct and proximate cause of Defendant's breach of the Agreement, Plaintiff was required to retain the undersigned counsel for the purposes of prosecuting the underlying action and are entitled to costs to the extent permitted by Florida law.

19.     Additionally, or in the alternative, Plaintiff is entitled to costs and expenses in bringing forth this action pursuant to the terms of the Agreement.

**WHEREFORE**, Plaintiff respectfully demands judgment for damages against Defendant in the amount of: **$7762.17**, in addition to expenses, costs, and any other relief this Court deems just and proper.

**THIS SPACE INTENTIONALLY LEFT BLANK**

## DESIGNATION OF E-MAIL ADDRESS

In accordance with Fla. R. Jud. Admin. 2.516(b)(1)(A), the undersigned attorney for the Plaintiff hereby designates eservice1@naderpourlaw.com as the undersigned's primary e-mail address and eservice2@naderpourlaw.com  as the secondary e-mail address.

Dated this 7 day of March ,2019 .

> **NADERPOUR & ASSOCIATES, P.A.**
> **Attorneys for the Plaintiff**
> **2743 Hollywood Boulevard**
> **Hollywood, FL 33020**
> **Tel.:   (954) 926-4233**
> **Fax.:   (954) 926-4238**
> **Primary Service Email Address:**
> **eservice1@naderpourlaw.com**

By:   _____
[ ] AMIR NADERPOUR, ESQ., FBN: 70262
[ ] JODI M. FOX, ESQ., FBN: 24872
[ ] SABERIN J. JAMSHED, ESQ., FBN: 88665
[ ] HUGO L. GARCIA, ESQ., FBN:1002333
[ ] LEDELL WILLIAMS, JR, ESQ., FBN:1002893

DocuSign Envelope ID: 6952155C-10F4-43CA-A7B6-739F7AB6E1D8

Composite Exhibit 1

## BILL OF SALE

LendingClub Corporation, a Delaware corporation ("LendingClub") and Velocity Investments, LLC, a Virginia limited liability company ("Buyer") executed an Account Purchase Agreement dated June 23, 2017 ("Agreement"). The terms of the Agreement will govern this Bill of Sale and any capitalized but undefined terms herein will have the meanings given to such terms in the Agreement.

For value received and in further consideration of the mutual covenants and conditions set forth in the Agreement, the Investors referenced in the data file named Lot919finaldata.xls hereby transfer(s), sell(s), conveys(s), grant(s), and deliver(s) to Buyer, its successors and assigns, without recourse except as set forth in the Agreement, to the extent of its ownership, the Accounts as set forth in the Account Schedule attached hereto as Exhibit I delivered by Seller to Buyer on the Closing Date, and as further described in the Agreement.

Pursuant to the Agreement, on September 29, 2017, the Closing Date, each Investor will sell (or cause to be sold) a pool of Accounts held by such Investors and described in the Account Schedule attached to this Bill of Sale;

LendingClub represents and warrants that each of the undersigned Investors has executed a limited power of attorney between such Investor and LendingClub wherein a designated power is for LendingClub to act as attorney-in-fact for such Investor and to execute this Bill of Sale on behalf of such Investor and take any action and execute any instruments or documents that LendingClub may deem reasonably necessary or advisable in connection with the transfers contemplated thereby.

Lot Number:

Total Unpaid Balance:

Number of Accounts:

DATED: September 29, 2017

**SELLER**: LENDINGCLUB CORPORATION

By: _____
D40C54A58D9B4A5...

Name (print): Russ Elmer
Title: GENERAL COUNSEL

**SELLER**: LC Trust I

By: _____
D40C54A58D9B4A5...

Name (print): Russ Elmer
Title: GENERAL COUNSEL

NLEXPSA2014ver1.DOC

SELLER: ACL Consumer Loan Trust III

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: ACL Consumer Loan Trust IV

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Arcadia Receivables Credit Trust 2017-1

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Banco Popular du Puerto Rico

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Banco Popular North America

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: BankNewport

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

NLEXPSA2014ver1.DOC

DocuSign Envelope ID: 6952155C-10F4-43CA-A7B6-739F7AB6E1D8

SELLER: CIRRIX CAPITAL II LLC

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Club Hill Credit Fund SPV I LLC

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: CoastalStates Bank

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: CONGRESSIONAL BANK

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Consumer Lending Receivables Trust 2016-A

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Consumer Lending Receivables Trust 2016-B

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

NLEXPSA2014ver1.DOC

SELLER: Direct Lending Investment - DL3

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Direct Lending Investment SA RL

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: DL Investment Sarl, Compartment
Moonstone 1

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Eaglewood Consumer Loan Trust 2014-1

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: EAGLEWOOD WAREHOUSE TRUST I

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Echelon Capital Loan Funding LLC

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By _____
Name (print): Russ Elmer
Title: General Counsel

NLEXPSA2014vcr1.DOC

SELLER: Echelon Diversified Fund, LP

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Echelon MS-LC 2017-1 Trust

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Echelon Special Opportunities Fund, L.P.

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Elkhorn Valley Bank & Trust STD

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Emerald Direct Lending Institutional
Series Fund LP

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: EW-LC Trust

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

NLEXPSA2014ver1.DOC

DocuSign Envelope ID: 6952155C-10F4-43CA-A7B6-739F7AB6E1D8

SELLER: GCI US HoldCO 1 LP

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

SELLER: GLC II Trust 2013-1

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

SELLER: GLC II Trust 2014-1

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

SELLER: GOLDEN CAPS TRUST

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

SELLER: HCG Consumer Credit II Trust

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

SELLER: IBI Consumer Credit, LP

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

SELLER: INCLINE FUND II, LTD

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Insikt Acquisition LLC

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: JLCL

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: LendingClub Issuance Grantor Trust
Series 2016-NP1

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: LENDINGCLUB ISSUANCE GRANTOR
TRUST, SERIES 2016-NP2

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Murray Hill Grantor Trust 2016-LC1

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

DocuSign Envelope ID: 6952155C-10F4-43CA-A7B6-739F7AB6E1D8

SELLER: MW-EW Financing Trust I

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: NBT Bank, National Association

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Nexlend Whole Loan SPV I LLC

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: ODYF CL LLC

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Poise Lending Fund SPV I, LLC

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

SELLER: Prime Meridian Income Fund, LP

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____
Name (print): Russ Elmer
Title: General Counsel

NLEXPSA2014ver1.DOC

SELLER: Promeleti LLC

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

SELLER: QPL-LC TRUST

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

SELLER: RANCHO SANTA FE THRIFT & LOAN ASSOCIATION

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

SELLER: Riverview MP Fund, L.P.

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

SELLER: Sallie Mae Bank

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

SELLER: SPV I Loan Trust

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

NLEXPSA2014ver1.DOC

SELLER: Sugar River Bank

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

SELLER: WebBank

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

SELLER: Wilmington Savings Fund Society FSB
D/B/A Christiana Trust Ttee of Alternative
Lending Holdings Trust

By: LENDINGCLUB CORPORATION, as attorney-in-fact

By: _____

Name (print): Russ Elmer

Title: General Counsel

## CERTIFICATE OF LOAN SALE

WebBank, a Utah-chartered industrial bank located in Salt Lake City, Utah ("Transferor"), hereby certifies that:

1.  Transferor originates loans that are serviced by LendingClub Corporation ("Transferee").

2.  Each of the loans identified by loan number on the attached Exhibit A (each, a "Loan") was originated by WebBank.

3.  On or about the respective "[Sale Date]" set forth on Exhibit A, Transferor transferred or otherwise conveyed to Transferee each Loan identified on Exhibit A.

4.  Transferor conveyed to Transferee all of Transferor's right, title and interest in each Loan subject to no prior security interest in favor of any other creditor of Transferor.

5.  Transferee was the servicer of each Loan from the origination of the Loan to the sale by Transferor to Transferee. In its role as servicer of the Loan, during the period Transferor owned the Loan, Transferee kept and maintained business records on behalf of WebBank in the regular course of business.

WEBBANK

By: _Kelly m Barrett_
Name: _Kelly m Barrett_
Title: _President_

Date: _9/27/17_

*Composite Exhibit "B*



This website does not support this version of Internet Explorer. Please upgrade to the latest version for a better experience. Upgrade Now
Lending Club
Utilities

- Welcome Victoria!
- Account
- Settings
- Sign Out
- Help

- View Full Site

# Borrower Documents and Information

Loan Id
_____
| Submit |
Enter a new Loan ID

# Current Loan Id: ████8769

## Contact Information

Full Real Name
    NADIA HARRIS
Screen Name
    ████████

Email
    ████████

Address
    1888 SE 14TH ST
    HOMESTEAD , FL 33035
Home Phone
    ████████

## Loan Issue Date

- Loan Issued on: 8/3/16 3:17 AM

## Breakdown of Loan

### Principal Balance (Principle remaining to be paid): $6,933.22

**Principal paid to date: $1,066.78**

**Total amount paid to date: $661.48 (5.56%)**

## Loan Documents

- Borrower Agreement
- * ☑ **I have read and agree to the Borrower Agreement**
- Truth in Lending Disclosure (Estimated)
- Truth in Lending Disclosure (Final)
- Credit Score Notice
- * ☑ **I have received my credit score notice**
- Authorization for Automatic Payments
- * ☑ **I have read and agree to the Authorization for Automatic Payments**

## Document that were signed to join LendingClub

- Terms of Use and Consent to Electronic Transactions and Disclosures
- * ☑ **I agree to the Terms of Use and Consent to Electronic Transactions and Disclosures**

## Documents that were signed to request a loan.

- Credit Profile Authorization
- * ☑ **I have read and agree to the Credit Profile Authorization. I understand that no credit data is actually transferred to Lending Club, and that this process will not impact my credit score.**
- Bank Account Verification & Debit Authorization
- * ☑ **I have read and agree to the terms of the Bank Account Verification**

Financial Innovation

> The San Francisco company, which made nearly $100 million last year, is hoping to seize on the success of the online lending industry as it grows into a robust alternative to traditional loans, and validate the industry as a high-tech, quicker version of bank lending that is here to stay.

San Jose Mercury News

See what others are saying about us

Featured Borrower

Andy

- Andy
- Carrollton, TX
- Debt Consolidation
- $6,100 at 9.98% APR

"The interest rate on my loan through Lending Club is a third less than what I was paying before, and it's very satisfying to know that there is an end date for being done with my debt."

Browse more personal loans

71 Stevenson Street, Suite 300
San Francisco, CA 94105, USA

- Home
- About Us
- Careers

Follow us:

- Privacy
- Affiliates
- Risks
- Developers
- Agreements
- Prospectus
- Terms of Use
- SEC Filings
- Statistics
- View Full Site

© Copyright 2006-2017. All rights reserved. Equal Housing Lender

tc_unknown



This website does not support this version of Internet Explorer. Please upgrade to the latest version for a better experience. Upgrade Now
Lending Club
Utilities

- Welcome Victoria!
- Account
- Settings
- Sign Out
- Help

- View Full Site

- Investing
- Personal Loans
- Auto Refinancing
- How It Works
- About Us

# Borrower Agreement

(July 2016)

The following Borrower Agreement ("Agreement") is between you ("you" and "your" mean each and every borrower, including any joint applicant/co-borrower) and WebBank, a Utah-chartered industrial bank ("we," or "us"). This Agreement governs the process by which you may make a request or requests for a loan from us through the website Lendingclub.com, including any subdomains thereof, or other application channels offered by us (collectively, the "Site") and operated by Lending Club Corporation ("Lending Club"). If you make a loan request, and if that request results in a loan that is approved and issued by us, then your loan will be governed by the terms of the Loan Agreement and Promissory Note, which is attached to this Agreement as Exhibit A, and as it may be revised from time to time. The version in effect when you make a loan request will apply to any loan made in response to that request, and any secondary loan would be governed by the terms of the document then in effect. This Agreement will remain in effect for the applicable loan, and will terminate if your loan request is cancelled, withdrawn, or declined.

**BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR AGREEMENT TO THESE TERMS.**

**1. Loans.** Under this Agreement, you can request an installment loan issued and originated by us that is facilitated through the Site. When you make a request, you agree to receive and timely repay the loan that may be made in response to that request, subject to your right to cancel the request before closing as described in section 6 below. Your agreement means you agree to repay the money provided by us to you and to abide by the terms of this Agreement, the Loan Agreement and Promissory Note, and all other agreements or disclosures provided to you during the loan process and which may be found in your Lending Club account. Any dispute with us, Lending Club or any subsequent holder of the Loan Agreement and Promissory Note will be resolved by binding arbitration, subject to your right to opt out as set forth below. Each loan request is subject to our credit criteria in effect at the time of your loan request.

**2. Account Verification.** You understand that if we are unable to verify your bank account for any reason, we will cancel your application, your loan request will not be posted on the Site, and this Agreement will be terminated.

**3. Loan Requests.** You may post a qualifying loan request on the Site. You may not post more than one loan request on the site at a time and you may not have more than two loans outstanding at any given time. You may post a loan request on the Site, and Lending Club investors ("Investors") will be able to review your loan request. Investors may commit to (i) purchase the loan by subsequently acquiring the loan itself from us or Lending Club or (ii) invest indirectly in your loan through the purchase of securities issued by Lending Club. You acknowledge that an Investor's commitment to invest in all or a portion of your loan does not confer any rights to you or obligate us to issue your loan. You understand that Investors make their own decisions whether to invest in your loan. Finally, Lending Club may also choose to invest in all or part of your loan request, but is not obligated to do so.

We may elect in our sole discretion to give you a partial funding option, if necessary, which means your loan will be issued if it receives commitments totaling less than the full amount of your requested loan (subject to any applicable minimum loan size).

WE DO NOT WARRANT OR GUARANTEE (1) THAT YOUR LOAN REQUEST WILL ATTRACT INVESTMENT INTEREST, OR (2) THAT YOU WILL RECEIVE A LOAN AS A RESULT OF POSTING A REQUEST.

No later than thirty (30) days after your application is complete, we will tell you if your loan is approved and will issue for some or all of your requested amount, or is declined, or if we are making you a counter-offer. Your loan request will be listed on the marketplace for at least fourteen (14) days, subject to investor interest. It may take up to forty-five (45) days to process and issue your loan. If at any point, you no longer want a loan under your pending loan request, you must notify us in writing of your election to terminate your loan request sufficiently far in advance of the loan closing for us to cancel the loan.

**4. Loan Terms.** Your loan will have a principal balance in the amount set forth in the Truth in Lending disclosure and Loan Agreement and Promissory Note, each of which is provided to you and placed into the on-line account you established upon registration. You agree and acknowledge that the initial loan disclosures made to you are estimates and are subject to change based on the actual, initial principal balance of the loan issued and your selected payment option (check or Automated Clearing House ("ACH")). **Opting to pay by check will result in a processing fee that will increase your APR.** All loans are unsecured, fully-amortizing, closed-end loans for the term stated in your Truth in Lending disclosure and Loan Agreement and Promissory Note. Your obligations, including your obligation to repay principal and interest, are set forth in the Loan Agreement and Promissory Note. Other fees and terms of the loan will also be set forth in the Loan Agreement and Promissory Note.

**5. Credit Decisions.** If you make a loan request, you must fully complete the application on the Site. You do not need to disclose alimony, child support or separate maintenance income if you do not wish to have it considered as a basis for repaying a loan. You agree and acknowledge that we may verify any information you submit either by asking for true and complete copies of necessary documentation, by other proof or through a third party. By proceeding with the application, you consent to our use of any third-party to verify any information about, or provide by, you. Failure to timely provide this information can result in your loan application being incomplete and closed by us, furthermore, we may terminate consideration of your application at any time in our sole discretion.

**6. Limited Power of Attorney Grant; Loan Request Cancellation & Closing.**

As a condition to receiving a loan from us, you hereby grant to Lending Club a limited power of attorney and appoint them and/or their designees as your true and lawful attorney-in-fact and agent, with full power of substitution and re-substitution, for you and in your name, place and stead, in any and all capacities, to complete and execute the Loan Agreement and Promissory Note(s) in the form attached as Exhibit A that reflect- the accepted terms set forth in each of your final Truth in Lending Disclosure(s) as such may be posted from time to time in response to your loan request(s) in the on-line account you have established with Lending Club where documents are stored and with full power and authority to do and perform each and every act and thing requisite and necessary to be done in connection with such power as fully to all intents and purposes as you might or

could do in person (*"Power of Attorney"*). This Power of Attorney is limited solely to the purpose described above and will expire automatically upon the termination of this Borrower Agreement. You may revoke this Power of Attorney by contacting us at support@lendingclub.com or calling 888-596-3157 and closing your account with us; provided, however, if a loan request has been approved you must provide such notice before the loan proceeds are transferred to your Designated Account and before the Loan Agreement and Promissory Note is executed on your behalf. Once the Loan Agreement and Promissory Note is signed by Lending Club or its designee acting as your attorney-in-fact, it is deemed executed on your behalf and shall be your valid and binding obligation thereafter.

**You agree and acknowledge that Lending Club is an intended third-party beneficiary of this Section 6 for purposes of receiving a loan from us.**

If you choose to revoke this Power of Attorney prior to execution, we will be unable to proceed with your loan request and your pending loan request will be considered withdrawn, your account closed, and you may be prohibited from posting additional qualifying loan requests in the future in our discretion.

You may cancel your application without any fee or penalty prior to funding of the loan, as long as you provide us with sufficient advance notice to stop the loan funding.

**7. Loan Consummation.**

YOU AGREE AND ACKNOWLEDGE THAT YOU ARE NOT OBLIGATED UNDER THE TERMS OF THE LOAN AGREEMENT AND PROMISSORY NOTE AND THE LOAN TRANSACTION WITH US IS NOT COMPLETED (I.E. CONSUMMATED) UNTIL YOUR ABILITY TO CANCEL YOUR LOAN APPLICATION HAS PASSED. YOU ACKNOWLEDGE THAT WE ARE MATERIALLY RELYING UPON THIS UNDERSTANDING IN UNDERTAKING THE POTENTIAL ISSUANCE OF YOUR LOAN.

**8. Servicing by Lending Club.** You acknowledge and agree that Lending Club may provide services to us in connection with evaluating your loan requests, and all other aspects of your relationship with us. Lending Club will also act as the servicer of any loan that you obtain. Lending Club may delegate servicing to another entity in its sole discretion without notice.

**9. Other Borrower Agreements; Use of Loan Proceeds.** You agree that you (A) are a US citizen, permanent resident or non-permanent resident alien in the United States on a valid long term visa; (B) will not, in connection with your loan request: (i) make any false, misleading or deceptive statements or omissions of fact in your listing, including but not limited to your loan description; (ii) misrepresent your identity, or describe, present or portray yourself as a person other than yourself; (iii) give to or receive from, or offer or agree to give to or receive from any Lending Club member or other person any fee, bonus, additional interest, kickback or thing of value of any kind except in accordance with the terms of your loan; (iv) represent yourself to any person, as a representative, employee, or agent of ours, or purport to speak to any person on our behalf; (v) use any of the loan proceeds to fund any post-secondary educational expenses, including, but not limited to, tuition, fees, books, supplies, miscellaneous expenses, or room and board; or (vi) use any of the loan proceeds to fund any illegal activity or any other activity or use not otherwise allowed under this Agreement or the Site; (vii) use any of the loan proceeds for the purpose of purchasing or carrying any securities; (viii) use the Site to request or obtain a loan for someone other than yourself; and (C) that you have all necessary consents, permissions, acknowledgements or agreements from all joint applicant/co-borrower and we may rely upon this agreement without any investigation or verification. You further acknowledge and agree that we may rely without independent verification on the accuracy, authenticity, and completeness of all information you provide to us. To the extent that we determine, in our sole discretion, that your loan request violates this Agreement the Terms of Use or any other agreement entered into with us or Lending Club, we may terminate your loan request and cancel this Agreement immediately.

**10. Liability of the Borrower and Joint Applicant/Co-Borrower is Joint and Several.** The liability of any joint applicant/co-borrower under this Agreement and under the Loan Agreement and Promissory Note is in addition to and not in lieu of the obligations of the primary borrower. The joint applicant/co-borrower agrees to

abide by the terms and conditions of this Agreement, the Loan Agreement and Promissory Note and any other agreement and documents as if an original signatory.

We and our successors and assigns have sole discretion to proceed, at any time, against any party responsible under this Agreement. Further, we can accept instructions from either you or the joint applicant/co-borrower, and notice can be given to either you or the joint applicant/co-borrower, and shall be binding on both and deemed received by all parties.

**11. TCPA Consent & Privacy.** Notwithstanding any current or prior election to opt in or opt out of receiving telemarketing calls or SMS messages (including text messages) from us, our agents, representatives, affiliates, or anyone calling on our behalf, you expressly consent to be contacted by us, our agents, representatives, affiliates, or anyone calling on our behalf for any and all purposes arising out of or relating to your loan and/or account, at any telephone number, or physical or electronic address you provide or at which you may be reached. You agree we may contact you in any way, including SMS messages (including text messages), calls using prerecorded messages or artificial voice, and calls and messages delivered using auto telephone dialing system or an automatic texting system. Automated messages may be played when the telephone is answered, whether by you or someone else. In the event that an agent or representative calls, he or she may also leave a message on your answering machine, voice mail, or send one via text.

You consent to receive SMS messages (including text messages), calls and messages (including prerecorded and artificial voice and autodialed) from us, our agents, representatives, affiliates or anyone calling on our behalf at the specific number(s) you have provided to us, or numbers we can reasonably associate with your account (through skip trace, caller ID capture or other means), with information or questions about your application, loan and/or account. You certify, warrant and represent that the telephone numbers that you have provided to us are your contact numbers. You represent that you are permitted to receive calls at each of the telephone numbers you have provided to us. You agree to promptly alert us whenever you stop using a particular telephone number.

Your cellular or mobile telephone provider will charge you according to the type of plan you carry. You also agree that we may contact you by e-mail, using any email address you have provided to us or that you provide to us in the future. We may listen to and/or record phone calls between you and our representatives without notice to you as permitted by applicable law. For example, we listen to and record calls for quality monitoring purposes.

**12. Assignment; Termination.** We may assign this Agreement and the Loan Agreement and Promissory Note, or any of our rights under this Agreement or the Loan Agreement and Promissory Note, in whole or in part at any time. You further understand, acknowledge and agree that Lending Club or another third-party may further sell, assign or transfer your Loan Agreement and Promissory Note and all associated documents and information related to the and the Loan Agreement and Promissory Note without your consent or notice to you. You may not assign, transfer, sublicense or otherwise delegate your rights or obligations under this Agreement to another person without our prior written consent. Any such assignment, transfer, sublicense or delegation in violation of this section 12 shall be null and void.

We may terminate this Agreement and your ability to make loan requests at any time. If you committed fraud or made a misrepresentation in connection with your registration on the Site or any application or request for a loan, performed any prohibited activity, or otherwise failed to abide by the terms of this Agreement, we will have all remedies authorized or permitted by this Agreement and applicable law.

**13. Entire Agreement.** This Agreement, and any Loan Agreement and Promissory Note that may be agreed for a loan, represent the entire agreement between you and us regarding the subject matter hereof and supersede all prior or contemporaneous communications, promises and proposals, whether oral, written or electronic, between us with respect to your loan request and loan.

**14. Electronic Transactions.** THIS AGREEMENT IS FULLY SUBJECT TO YOUR CONSENT TO ELECTRONIC TRANSACTIONS AND DISCLOSURES, WHICH CONSENT IS SET FORTH IN THE TERMS OF USE FOR THE SITE.

**15. Notices.** All notices and other communications to you hereunder may be given by email to your registered email address or posted on the Site, and shall be deemed to have been duly given and effective upon transmission. You acknowledge that you have control of such email account and your area on the Site and that communications from us may contain sensitive, confidential, and collections-related communications. If your registered email address changes, you must notify Lending Club of the change by sending an email to support@lendingclub.com or calling 888-596-3157. You also agree to update your registered residence address and telephone number on the Site if they change.

**16. NO WARRANTIES.** EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, WE MAKE NO REPRESENTATIONS OR WARRANTIES TO YOU, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

**17. LIMITATION ON LIABILITY.** IN NO EVENT SHALL WE BE LIABLE TO YOU FOR ANY LOST PROFITS OR SPECIAL, EXEMPLARY, CONSEQUENTIAL OR PUNITIVE DAMAGES, EVEN IF INFORMED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHERMORE, WE MAKE NO REPRESENTATION OR WARRANTY TO YOU REGARDING THE EFFECT THAT THE AGREEMENT MAY HAVE UPON YOUR FOREIGN, FEDERAL, STATE OR LOCAL TAX LIABILITY.

**18. Choice of Law.** We are located in the state of Utah and this Agreement is entered into in the state of Utah. The provisions of this Agreement will be governed by federal laws and the laws of the state of Utah to the extent not preempted, without regard to any principle of conflicts of laws that would require or permit the application of the laws of any other jurisdiction.

**19. Miscellaneous.** The parties acknowledge that there are no third party beneficiaries to this Agreement (other than Lending Club). Any waiver of a breach of any provision of this Agreement will not be a waiver of any other subsequent breach. Failure or delay by either party to enforce any term or condition of this Agreement will not constitute a waiver of such term or condition. If at any time after the date of this Agreement, any of the provisions of this Agreement shall be held by any court of competent jurisdiction to be illegal, void or unenforceable, such provision shall be of no force and effect, but the illegality and unenforceability of such provision shall have no effect upon and shall not impair the enforceability of any other provisions of this Agreement. The headings in this Agreement are for reference purposes only and shall not affect the interpretation of this Agreement in any way.

**20. Arbitration.** RESOLUTION OF DISPUTES: I HAVE READ THIS PROVISION CAREFULLY AND UNDERSTAND THAT IT LIMITS MY RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND ME. I UNDERSTAND THAT I HAVE THE RIGHT TO REJECT THIS PROVISION AS PROVIDED IN PARAGRAPH (b) BELOW.

**a.** Either party to this Agreement, or any subsequent holder, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section 20 (the "Arbitration Provision"), unless you opt out as provided in section 20(b) below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us and/or any subsequent holder (or persons claiming through or connected with us and/or the subsequent holders), on the other hand, relating to or arising out of this Agreement, any Loan Agreement and Promissory Note(s), the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing, including (except to the extent provided otherwise in the last sentence of section 20(f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

**b.** You may opt out of this Arbitration Provision for all purposes by sending an arbitration opt out notice to WebBank, c/o Lending Club Corporation, 71 Stevenson St., Suite 300, San Francisco CA, 94105, Attention:

Legal Department, **which is received at the specified address within 30 days of the date of your electronic acceptance of the terms of this Agreement.** The opt out notice must clearly state that you are rejecting arbitration; identify the Agreement to which it applies by date; provide your name, address, and social security number; and be signed by you. You may send an opt out notice in any manner you see fit as long as it is received at the specified address within the specified time. No other methods can be used to opt out of this Arbitration Provision. If the opt out notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the opt out notice on your behalf.

**c.** The party initiating arbitration shall do so with the American Arbitration Association (the "AAA") or Judicial Alternatives and Mediation Services ("JAMS"). The arbitration shall be conducted according to, and the location of the arbitration shall be determined in accordance with, the rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or any countervailing law. If you have any questions concerning the AAA or would like to obtain a copy of the AAA arbitration rules, you may call 1(800) 778-7879 or visit the AAA's web site at: www.adr.org. If you have any questions concerning JAMS or would like to obtain a copy of the JAMS arbitration rules, you may call 1(800) 352-5267 or visit their web site at: www.jamsadr.com. In the case of a conflict between the rules and policies of the administrator and this Arbitration Provision, this Arbitration Provision shall control, subject to countervailing law, unless all parties to the arbitration consent to have the rules and policies of the administrator apply.

**d.** If we (or the subsequent holder) elect arbitration, we (or the subsequent holder, as the case may be) shall pay all the administrator's filing costs and administrative fees (other than hearing fees). If you elect arbitration, filing costs and administrative fees (other than hearing fees) shall be paid in accordance with the rules of the administrator selected, or in accordance with countervailing law if contrary to the administrator's rules. We (or the subsequent holder, as the case may be) shall pay the administrator's hearing fees for one full day of arbitration hearings. Fees for hearings that exceed one day will be paid by the party requesting the hearing, unless the administrator's rules or applicable law require otherwise, or you request that we (or the subsequent holder) pay them and we agree (or the subsequent holder agrees) to do so. Each party shall bear the expense of its own attorneys' fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary herein.

**e.** Within 30 days of a final award by the arbitrator, any party may appeal the award for reconsideration by a three-arbitrator panel selected according to the rules of the arbitrator administrator. In the event of such an appeal, any opposing party may cross-appeal within 30 days after notice of the appeal. The panel will reconsider de novo all aspects of the initial award that are appealed. Costs and conduct of any appeal shall be governed by this Arbitration Provision and the administrator's rules, in the same way as the initial arbitration proceeding. Any award by the individual arbitrator that is not subject to appeal, and any panel award on appeal, shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered as a judgment in any court of competent jurisdiction.

**f.** We agree not to invoke our right to arbitrate an individual Claim you may bring in Small Claims Court or an equivalent court, if any, so long as the Claim is pending only in that court. NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT. Unless consented to in writing by all parties to the arbitration, no party to the arbitration may join, consolidate, or otherwise bring claims for or on behalf of two or more individuals or unrelated corporate entities in the same arbitration unless those persons are parties to a single transaction. Unless consented to in writing by all parties to the arbitration, an award in arbitration shall determine the rights and obligations of the named parties only, and only with respect to the claims in arbitration, and shall not (a) determine the rights, obligations, or interests of anyone other than a named party, or resolve any Claim of anyone other than a named party; nor (b) make an award for the benefit of, or against, anyone other than a named party. No administrator or arbitrator shall have the power or authority to waive, modify, or fail to enforce this section 20(f), and any attempt to do so, whether by rule, policy, arbitration decision or otherwise, shall be invalid and unenforceable. Any challenge to the

validity of this section 20(f) shall be determined exclusively by a court and not by the administrator or any arbitrator.

**g.** This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the FAA. The arbitrator will apply substantive law consistent with the FAA and applicable statutes of limitations. The arbitrator may award damages or other types of relief permitted by applicable substantive law, subject to the limitations set forth in this Arbitration Provision. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court. The arbitrator shall take steps to reasonably protect confidential information.

**h.** This Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Agreement and the relationship of the parties and/or Lending Club; (ii) the bankruptcy or insolvency of any party or other person; and (iii) any transfer of any loan or Loan Agreement or Promissory Note(s) or any other promissory note(s) which you owe, or any amounts owed on such loans or notes, to any other person or entity. If any portion of this Arbitration Provision other than section 20(f) is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in section 20(f) are finally adjudicated pursuant to the last sentence of section 20(f) to be unenforceable, then no arbitration shall be had. In no event shall any invalidation be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Provision.

THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY.

## Exhibit A

### LOAN AGREEMENT AND PROMISSORY NOTE

Borrower Member ID: _____

Joint Applicant/Co-Borrower Member ID:

_____

$_____

_____, 20_

For value received, I (referred to herein as "Borrower" which for purposes of this Loan Agreement and Promissory Note (the "Note") includes all parties obligated hereunder, including any joint applicant/co-borrower ) promise to pay to the order of WebBank or any subsequent holder ("you" or "Lender") of this Note the principal sum of _____ ($_____) Dollars with interest as set forth below. Borrower intends to be legally bound by this Note. Borrower has read, understood, and agreed to all of the terms of this Note.

Interest Rate. This Note bears interest during each calendar month from the date hereof until paid in full, at a fixed rate of _____ (%) per annum.

Interest Calculation Method. Interest is calculated daily on the basis of a 360-day year with 12 months each of which is 30 days (or 30/360) long, regardless if a month has more or less than 30 days. This Note shall bear interest on any overdue installment of principal and, to the extent permitted by applicable law, on any overdue installment of interest, at the interest rate stated and as calculated above.

Payments. Principal and interest is to be paid during and throughout the period of _____ months in the following manner:

Payments of principal and interest in the amount of _____ ($_____) Dollars are to be made by the Borrower to the Lender commencing _____, 20__, and on the same day of each successive month thereafter until _____, 20__, when the full amount of unpaid principal, together with unpaid accrued interest is due and payable. If the monthly anniversary is on the 29th, 30th, or 31st of the month, and the following month does not have a 29th, 30th, or 31st day, the monthly payment will be due on the last day of the month in which the payment was due.

Borrower's last payment might be of a different amount, which could be higher than the monthly installment amounts, to adjust for rounding and/or due to calculation of daily interest charges in certain instances such as a payment due date change or Borrower making a payment after the payment due date. In such cases, the amount of the last monthly payment will be adjusted by the amount necessary to repay the loan in full.

All payments on this Note are to be made in immediately available lawful money of the United States.

Borrower may make loan payments either by check, subject to any applicable check processing fee, or Borrower may authorize any Lender to debit Borrower's designated account by ACH transfer for the amount of each payment due on each due date. Borrower is responsible for ensuring that all names, account, routing or other similar information provided by Borrower to Lender for accounts that Borrower is directing Lender to deliver loan proceeds to ("Directed Accounts") are accurate and complete. Borrower agrees to hold Lender and Lending Club harmless for any alleged or actual loss, claim, fee or other damage or expense Borrower may suffer related to the failure of a Directed Account to receive such proceeds if such failure was the result (directly or indirectly) of any error in any name, account, routing or other similar information provided by Borrower to Lender. Borrower acknowledges that neither it nor Lending Club have any obligation to confirm or investigate the accuracy or completeness of the information Borrower has provided. Borrower further agrees that if the loan proceeds are rejected by a Directed Account that is not Borrower's designated bank account that Lender may deliver the loan proceeds into the designated bank account to satisfy our obligation of loan proceed delivery. In all events under this section, **interest will begin to accrue as date of issuance of the loan** and not upon the actual receipt of proceeds by Borrower or any other designated third-party. If we are unable to deliver loan proceeds to the Directed Account(s) or Borrower's designated bank account after 14 days from the initial delivery attempt, the loan will be canceled and only in this circumstance will Borrower not owe any interest on the loan.

If Borrower elects to make payments by automatic withdrawal, Borrower has the right to stop payment of these automatic withdrawals or revoke prior authorization for automatic withdrawals by notifying Lender and Lending Club of the exercise of its right to stop a payment or revoke authorization for automatic withdrawals **no less than three (3) banking days** before Borrower's next payment due date.

If Borrower elects to make payments by check, Borrower must send the check either by regular mail or by overnight mail or UPS delivery to Wells Fargo Lock Box Services, Dept #34268, 3440 Walnut Ave, Window H, Fremont, CA 94538. There will be a $7 check processing fee per payment, subject to applicable law. **Borrower may change its payment method by contacting support@lendingclub.com.**

Borrower's payment method and any necessary authorization do not affect its obligation to pay when due all amounts payable on the Note, whether or not there are sufficient funds in the applicable deposit account. The foregoing authorization is in addition to, and not in limitation of, any rights of setoff Lender may have.

All payments are to be applied first to the payment of all fees, expenses and other amounts due (excluding principal and interest), then to accrued interest, and the balance on account of outstanding principal; provided, however, that after an Event of Default (as defined below), payments will be applied to Borrower's obligations as Lender determines in its sole discretion.

**If this loan is subject to an origination fee, such fee is deducted from the loan proceeds and paid to the Lender. Any origination fee of 5% or less is not refundable regardless of when, or if, the loan is paid in full. Any origination fee amount in excess of 5% is refundable on a prorated basis over the term of the loan when and if the loan is paid in full prior to its maturity date. A partial pre-payment will not result in the refund of any origination fee amount. Borrower acknowledges that the origination fee is considered part of the principal of Borrower's loan and is subject to the accrual of interest.**

If a payment is returned or fails due to insufficient funds in the designated account, Borrower will be charged a fee of $15, to the extent permitted by applicable law. An unsuccessful payment fee will be assessed for each failed attempt, up to three times total for a single payment. The bank that holds Borrower's deposit account may assess its own fee in addition to the fee assessed under this Note. If Borrower's payment is more than 15 days late, a late fee may be charged in an amount equal to the greater of 5% of the outstanding payment or $15, to the extent permitted by applicable law. Only one late fee will be charged on each late payment. **Any payment received after 3:00 P.M., Mountain Time, on a banking day is deemed received on the next succeeding banking day.** Borrower authorizes Lender, and its successors and assigns, to deduct any fees due by ACH transfers initiated to the deposit account on file for Borrower.

Prepayments and Partial Payments. Borrower may make any payment early, in whole or in part, without penalty or premium at any time. Any partial prepayment is applied against the principal amount outstanding and does not postpone the due date of any subsequent monthly payment, unless expressly agreed to in writing. If Borrower prepays this Note in part, Borrower agrees to continue to make regularly scheduled payments until all amounts due under this Note are paid. Lender may accept late payments or partial payments, even though marked "paid in full", without losing any rights under this Note. Any regularly scheduled monthly installment of principal and interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due.

Use of Funds. Borrower certifies that the proceeds of the loan will not be used for the purpose of purchasing or carrying any securities or to fund any illegal activity, or to fund any post-secondary educational expenses, including, but not limited to, tuition, fees, books, supplies, miscellaneous expenses, or room and board.

Default. Borrower will be deemed in default (each, an "Event of Default") of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the loan; (2) files or has instituted against it or any joint applicant/co-borrower any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with its loan or (4) fails to abide by the terms of this Note or the Borrower Agreement. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts owed on this Note.

Lender may report information about Borrower's account to credit bureaus. Should there be more than one Borrower, Lender will report that loan account to the credit bureaus in the names of all Borrowers. Late payments, missed payments, or other defaults on an account may be reflected in Borrower's credit report. Borrower agrees to pay all costs of collecting any delinquent payments, including reasonable attorneys' fees, as permitted by applicable law.

Joint and Several Liability.

The liability of any joint applicant/co-borrower to repay in full this loan is in addition to and not in lieu of the obligations of the primary Borrower to repay the loan in full. The joint applicant/co-borrower agrees to abide by the terms and conditions of this Note or any other agreements or documents provide or executed as part of the application process, as if an original signatory.

Lender (or its designee) has sole discretion to proceed against both the Borrower and any joint applicant/co-borrower to recover all the amounts due under this Note. Further, Lender (or its designee) can accept instructions

from either Borrower or the joint applicant/co-borrower, and notice given to either party shall be binding on both parties and all disclosures provided to a party will be deemed simultaneously received by all parties.

Loan Charges. If a law that applies to the Loan and sets maximum loan charges is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this Note or by making a direct payment to Borrower.

Electronic Transactions. THIS AGREEMENT IS FULLY SUBJECT TO BORROWER'S CONSENT TO ELECTRONIC TRANSACTIONS AND DISCLOSURES, WHICH CONSENT IS SET FORTH IN THE TERMS OF USE FOR THE SITE. BORROWER EXPRESSLY AGREES THAT THE NOTE IS A "TRANSFERABLE RECORD" FOR ALL PURPOSES UNDER THE ELECTRONIC SIGNATURES IN GLOBAL AND NATIONAL COMMERCE ACT AND THE UNIFORM ELECTRONIC TRANSACTIONS ACT.

Miscellaneous.

Lender may, without notice to Borrower, assign all of its right, title and interest in this Note to any other third-party. Borrower further understands, acknowledges and agrees that any assignee may sell, assign or transfer the Note and all associated documents and information related to the Note without Borrower's consent or delivery of notice. Borrower may not assign this Note without the prior written consent of Lender. This Note inures to the successors, permitted assigns, heirs and representatives of Borrower and Lender.

Borrower hereby waives demand, notice of non-payment, protest, and all other notices or demands whatsoever, and hereby consents that without notice to and without releasing the liability of any party, the obligations evidenced by this Note may from time to time, in whole or part, be renewed, extended, modified, accelerated, compromised, settled or released by Lender.

Any changes to this Note must be in writing signed by Borrower and Lender. Notices will be provided electronically to Borrower's account, unless Borrower has opted out of electronic delivery and then will be mailed to the addresses then on record.

This Note is subject to the arbitration provisions of the Borrower Agreement between Lender and Borrower, which is incorporated by reference into this Note.

Controlling Law. Lender is located in the State of Utah and this Note is executed and delivered in the State of Utah and is a contract made under such state's law. The provisions of this Note will be governed by federal laws and the laws of the State of Utah to the extent not preempted, without regard to any principle of conflicts of law. The unenforceability of any provision of this Note shall not affect the enforceability or validity of any other provision of this Note.

**STATE LAW NOTICES:**

CALIFORNIA RESIDENTS ONLY: A married applicant may apply for a separate account. If Lender takes any adverse action as defined by § 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, Borrower has the right to obtain within 60 days a free copy of Borrower's consumer credit report from the consumer reporting agency who furnished the consumer credit report and from any other consumer credit reporting agency that complies and maintains files on consumers on a nationwide basis.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, Borrower is hereby notified that a negative credit report reflecting on Borrower's credit record may be submitted to a credit reporting agency if Borrower fails to fulfill the terms of Borrower's credit obligations.

KANSAS: NOTICE TO CONSUMER: 1. Do not sign this Note before you read it. 2. You are entitled to a copy of this Note. 3. You may prepay the unpaid balance at any time without penalty.

MARYLAND RESIDENTS ONLY: Lender elects to make this loan pursuant to Subtitle 10 (Credit Grantor Closed End Credit provisions) of Title 12 of the Maryland Commercial Law Article only to the extent that such provisions are not inconsistent with Lender's authority under federal law (12 U.S.C. § 85, § 1463(g), or § 1831d, as appropriate) and related regulations and interpretations, which authority Lender expressly reserves.

MASSACHUSETTS RESIDENTS ONLY: Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

MISSOURI AND NEBRASKA RESIDENTS: ORAL LOAN AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF SUCH DEBT, INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT, ARE NOT ENFORCEABLE. TO PROTECT BORROWER(S) AND THE LENDER AND ANY HOLDER OF THIS NOTE FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

NEW JERSEY RESIDENTS: The section headings of the Note are a table of contents and not contract terms. Portions of this Note with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Note, actions or practices (i) by which Lender is or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may be or will be taken by Lender unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND and VERMONT RESIDENTS: : Borrower understands and agrees that Lender may obtain a consumer credit report in connection with this application and in connection with any update, renewals for extension of any credit as a result of this application. If Borrower asks, Borrower will be informed whether or not such a report was obtained, and if so, the name and address of the agency that furnished the report. Borrower also understands and agrees that Lender may obtain a consumer credit report in connection with the review or collection of any loan made to Borrower as a result of this application or for other legitimate purposes related to such loans.

OHIO RESIDENTS ONLY: The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

WASHINGTON RESIDENTS ONLY: Oral agreements or oral commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt are not enforceable under Washington law.

WISCONSIN RESIDENTS ONLY: For married Wisconsin residents, Borrower's signature confirms that this loan obligation is being incurred in the interest of Borrower's marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under § 766.59 of the Wisconsin statutes or court decree under § 766.70 adversely affects Lender's interest unless, prior to the time that the loan is approved, Lender is furnished with a copy of the marital property agreement, statement, or decree or have actual knowledge of the adverse provision. If this loan for which Borrower is applying is granted, Borrower will notify Lender if Borrower has a spouse who needs to receive notification that credit has been extended to Borrower.

MEMBER ID OF BORROWER & CO-BORROWER (if any)
BY: LENDINGCLUB CORPORATION
ATTORNEY-IN-FACT FOR BORROWER and CO-BORROWER (if any)
(SIGNED ELECTRONICALLY)

# Exhibit B

**WEBBANK PRIVACY NOTICE**

| FACTS | WHAT DOES WEBBANK DO WITH YOUR PERSONAL INFORMATION IN CONNECTION WITH YOUR LENDINGCLUB ACCOUNT? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and transaction history<br>• Account balances and payment history<br>• Credit history and credit scores<br><br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons WebBank chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does WebBank share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes -** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | YES | NO |
| **For our marketing purposes -** to offer our products and services to you | YES | NO |
| **For joint marketing with other financial companies** | NO | We don't share |
| **For our affiliates' everyday business purposes -** information about your transactions and experiences | NO | We don't share |
| **For our affiliates' everyday business purposes -** information about your creditworthiness | NO | We don't share |
| **For our affiliates to market to you** | NO | We don't share |
| **For non-affiliates to market to you** | NO | We don't share |

| Questions? | Call (888) 596-3157 |
|---|---|

| What we do | |
|---|---|
| **How does WebBank protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does WebBank collect my personal information?** | We collect your personal information, for example, when you<br><br>• Open an account or pay us by check<br>• Provide account information or give us your contact information<br>• Show your driver's license<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br><br>• Sharing for affiliates' everyday business purposes-information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• Sharing for non-affiliates companies to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account - unless you tell us otherwise. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• WebBank does not share with our affiliates |
| **Non-affiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• WebBank does not share with non-affiliates so they can market to you |

| Definitions | |
| --- | --- |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>• WebBank doesn't jointly market |

71 Stevenson Street, Suite 300
San Francisco, CA 94105, USA

- Home
- About Us
- Careers

Follow us:

- Privacy
- Affiliates
- Risks
- Developers
- Agreements
- Prospectus
- Terms of Use
- SEC Filings
- Statistics
- View Full Site

© Copyright 2006-2017. All rights reserved. Equal Housing Lender

tc_unknown

# Exhibit

# B

THE ELEVENTH JUDICIAL CIRCUIT
MIAMI-DADE COUNTY, FLORIDA

CASE NO.  04-1
(Court Administration)

ADMINISTRATIVE ORDER
NO.  04-05

(Rescinding Administrative Order No.
97-19, Administrative Order No. 97-19
A1 and Administrative Order No. 2-07)

IN   RE:   RE-ESTABLISHMENT   AND
JURISDICTION   OF   COUNTY   COURT
DISTRICTS
_____

**WHEREAS**, pursuant to Administrative Order No. 97-19, as amended by Administrative Order No. 97-19-A1 (collectively the "Administrative Order"), the Court deemed it necessary, for the prompt and efficient filing and assignment of cases in the various, previously established County Court Districts ("Districts"), to relocate some of the court facilities in the Districts and define the jurisdiction of such Districts in a more precise and objective manner; and

**WHEREAS**, in view of the changes which have occurred within the Districts since the enactment of the Administrative Order, the Court has determined that it is once again necessary to re-establish and define the jurisdiction of the respective Districts;

**NOW, THEREFORE,** pursuant to the authority vested in me as Chief Judge of the Eleventh Judicial Circuit of Florida, it is hereby **ORDERED**:

1.     **Location of County Court Districts**.

The location of the County Court Districts shall be the following:

- **Central District (05)**, located at the Dade County Courthouse, 73 West Flagler Street, Miami (civil actions), and the Richard E. Gerstein Justice Building, 1351 Northwest 12th Street, Miami (criminal, traffic offenses and infractions);

- **North Central (Caleb) District (20)**, located at the Joseph Caleb Community Center, 5400 Northwest 22nd Avenue, Miami provides limited services by the Clerk of the Court.  All pending matters, designated for section (20), filed prior to January

- 1 -

1, 2004, will be re-assigned amongst the six (6) judicial sections at the Dade County Courthouse.  Pending cases filed after January 1, 2004, will be designated (21) for handling at the Northwest District;

- **Northwest District (21)**, located at 11 East 6th Street, Hialeah;

- **North District (23)**, located at 15555 Biscayne Boulevard, Miami;

- **East District (24)**, located at 1130 Washington Avenue, Miami Beach;

- **South Central District (25)**, located at 3100 Ponce de Leon Boulevard, Coral Gables; and

- **South District (26)**, located at the South Dade Government Center, 10710 Southwest 211th Street, Miami.

2.    <u>**Boundaries of County Court Districts.**</u>

Each of the following County Court Districts shall consist of the geographic areas located within the zip codes as indicated below:

<u>**Central District (05)**</u>

| | | | | | |
|---|---|---|---|---|---|
| 33109 | 33122 | 33125 | 33126 | 33127 | 33128 |
| 33129 | 33130 | 33131 | 33132 | 33133 | 33135 |
| 33136 | 33137 | 33142 | 33145 | 33147 | 33149 |
| 33150 | 33166 | 33172 | 33174 | 33182 | 33184 |
| 33192 | 33194 | | | | |

<u>**North Central District (20)**</u>
(Limited services; use zip code to determine the District in which to file cases.)

<u>**Northwest District (21)**</u>

| | | | | | |
|---|---|---|---|---|---|
| 33010 | 33012 | 33013 | 33014 | 33016 | 33018 |
| 33178 | | | | | |

<u>**North District (23)**</u>

| | | | | | |
|---|---|---|---|---|---|
| 33015 | 33054 | 33055 | 33056 | 33138 | 33160 |
| 33161 | 33162 | 33167 | 33168 | 33169 | 33179 |
| 33180 | 33181 | | | | |

- 2 -

### East District (24)

33139 33140   33141   33154

### South Central District (25)

33134   33143   33144   33146   33155   33165
33173

### South District (26)

33030   33031   33032   33033   33034   33035
33039   33156   33157   33158   33170   33175
33176   33177   33183   33185   33186   33187
33189   33190   33193   33196

3. **Filing in County Court Districts**

   (a) **Mandatory Filing**:

All actions for recovery of possession of property under Chapters 82 and 83 of the Florida Statutes; all actions for damages under Chapter 82 of the Florida Statutes and actions for the recovery of rent or rent security deposits in which the demand involved does not exceed Fifteen Thousand Dollars ($15,000.00), exclusive of costs, interest and attorney's fees, shall be filed in the District in which the real property is located.

   (b) **Optional Filing**:

Except as provided under subparagraph 3(a) above, the venue for filing all other actions at law of a civil nature in which the demand or value of property involved does not exceed Fifteen Thousand Dollars ($15,000.00), exclusive of costs, interest and attorney's fees, shall be controlled and determined, at the option of the plaintiff, by Sections 47.011, 47.021, 47.041, 47.051 and 47.061 of the Florida Statutes

4. **Traffic and Penal Cases**.

Traffic and penal cases may be assigned for trial at any County Court facility, or any other facility, for the convenience of parties, witnesses and police officers.

5. **Landlord/Tenant Cases**.

Landlord/tenant cases should be filed in the District with the zip code that corresponds with the zip code for the property.

- 3 -

6.      **Jury Trials**.

Jury trials in civil, criminal and traffic offenses may be assigned to and heard at any County Court facility.

7.      **North Central (Caleb) Branch Court Annex.**

The window in the public service counter at the Dade County Courthouse to accept only those cases that would ordinarily be filed at the North Central Branch Court, as designated by Administrative Order No. 2-07, is hereby closed.

Administrative Order No. 97-19, as amended by Administrative Order No. 97-19- A1, entered in Case No. 97-1 (Court Administration) and Administrative Order No. 2-07, entered in Case No. 02-1 (Court Administration), are hereby rescinded in their entirety and held for naught.

This Order shall become effective on July 6, 2004 and shall remain in effect until further order of the Court.

**DONE AND ORDERED** in Chambers at Miami-Dade, Florida, this _____ day of June, 2004.

_____
**JOSEPH P. FARINA, CHIEF JUDGE**
**ELEVENTH JUDICIAL CIRCUIT OF FLORIDA**

- 4 -

# Exhibit
# C

Google Maps    1888 SE 14 St, Homestead, FL 33035 to North Dade Justice Center         Drive 55.0 miles, 1 h 9 min



🚗 **via Ronald Reagan Turnpike**     **1 h 9 min**

Fastest route now due to traffic     55.0 miles
conditions

⚠ This route has tolls.
⚠ This route has restricted usage or private roads.

🚗 **via Ronald Reagan Turnpike and**     **1 h 11 min**
**FL-826 N**     49.4 miles

Some traffic, as usual

🚗 **via Ronald Reagan Turnpike and**     **1 h 13 min**
**FL-874 N**     46.9 miles

Some traffic, as usual

# Exhibit

# D

Case 1:19-cv-21367-DPG Document 1 Entered on FLSD Docket 04/10/2019 Page 49 of 49

1888 SE 14 St, Homestead, FL 33035 to South Dade Justice Center

Drive 12.1 miles, 21 min



Map data ©2019 Google    2 mi

🚗 **via Ronald Reagan Turnpike**    **21 min**

Fastest route, despite the usual traffic    12.1 miles

⚠️ This route has tolls.

⚠️ This route has restricted usage or private roads.

🚗 **via US-1 N**    **31 min**

Lighter traffic than usual    11.1 miles

🚗 **via SW 162nd Ave and US-1 N**    **35 min**

Lighter traffic than usual    11.9 miles